IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          *

     v.          *          Criminal Action No. RDB-13-0002
Civil Action No. RDB-16-2230

ANTONIO DAVIS,          *

    *Defendant.*          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Petitioner Antonio Davis ("Petitioner" or "Mr. Davis") is presently serving a 248-month sentence after a jury convicted him of crimes related to his participation in 2012 in a conspiracy to rob a narcotics supplier in Baltimore City.  Specifically, following a four-day jury trial in August 2013, a federal jury convicted Mr. Davis of (1) conspiracy to commit Hobbs Act[1] robbery, in violation of 18 U.S.C. § 1951(a) (Count One); (2) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count Two); (3) conspiracy to possess firearms in furtherance of a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(o) (Count Three); (4) possession of firearms in furtherance of a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Four); and (5) possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Five).  (ECF No. 101.)  The Court then sentenced Mr. Davis to 295 months' incarceration.  (ECF No. 132.)  In 2015, the Court reduced Mr. Davis's sentence to

---

[1] Under the Hobbs Act, it is "a federal crime to commit, attempt to commit, or conspire to commit a robbery with an interstate component." *United States v. Taylor*, 596 U.S. 845, 848 (2022).

248 months based on Amendment 782 to the United States Sentencing Guidelines.[2] (ECF No. 201; ECF No. 202 *SEALED*.) Mr. Davis is now 45 years old and currently incarcerated at Coleman Medium FCI in Sumterville, Florida, with a projected release date of February 19, 2031. *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search by register number: 56068-037).

Presently pending before this Court are various post-conviction motions filed by Mr. Davis and appointed counsel.[3] As relevant to the instant matter, Mr. Davis has filed a *pro se* Motion to Vacate or Reduce Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 224) ("Mr. Davis's *Pro Se* Motion"), which has been repeatedly supplemented by counsel, *see* (ECF Nos. 231, 241, 288) and once supplemented by Mr. Davis (ECF No. 290). Collectively, the Court construes these filings (ECF Nos. 224, 231, 241, 288, 290) as Mr. Davis's § 2255 Motion. Also pending is Mr. Davis's Motion to Appoint Counsel (ECF No. 225) as to his § 2255 Motion. Mr. Davis's § 2255 Motion (ECF Nos. 224, 231, 241, 288, 290) seeks relief as to his convictions under 18 U.S.C. §§ 924(o), (c) in Counts Three and Four, respectively, and raises a *pro se* claim of ineffective assistance of counsel based on failure to introduce evidence at trial.[4] The

---

[2] At the time of Mr. Davis's trial, sentencing, and 2015 resentencing, Mr. Davis's case was assigned to Judge Quarles of this Court. The case was then reassigned to the undersigned judge in 2016.

[3] Mr. Davis's pending Motion for Compassionate Release (ECF No. 319) as supplemented by appointed counsel (ECF No. 340), will be addressed by separate opinion. Additionally, Mr. Davis has filed a *pro se* Amendment 821 Motion (ECF No. 349) in which he seeks a sentence reduction based on the retroactive application of Amendment 821 to the United States Sentencing Guidelines.

[4] Counsel for Mr. Davis also separately filed a Supplemental § 2255 Motion (ECF No. 295) ("Supplemental § 2255 Motion"), seeking relief as to Mr. Davis's conviction under 18 U.S.C. § 922(g), but counsel later withdrew that Supplemental § 2255 Motion. *See* (ECF No. 314; ECF No. 315). Mr. Davis has filed several Correspondence, *see, e.g.* (ECF Nos. 352, 355), expressing that he did not wish to withdraw his Supplemental § 2255 Motion (ECF No. 295). The Notice of Dismissal (ECF No. 314), however, includes Mr. Davis's signature. Accordingly, the Court addresses only the § 2255 Motions pending before it, *see* (ECF Nos. 224, 231, 241, 288, 290).

Government has not responded to Mr. Davis's § 2255 filings.  Mr. Davis's submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  As an initial matter, Mr. Davis's Motion to Appoint Counsel (ECF No. 225) is DENIED AS MOOT because, as detailed above, the Office of the Federal Public Defender filed numerous supplements to his *pro se* § 2255 Motion.  For the reasons set forth below, Mr. Davis's Motion to Reduce or Vacate Sentence Pursuant to 28 U.S.C. § 2255 (ECF Nos. 224, 231, 241, 288, 290) is DENIED.

## BACKGROUND

On December 12, 2012, at the direction of law enforcement officers, a confidential informant known as B.S.[5] introduced Mr. Davis, Rodney Proctor ("Proctor"), Sean Thornton ("Thornton"), and Michael Johnson ("Johnson") (collectively "Defendants") to another confidential informant, who told Defendants that he was a drug trafficker interested in robbing his narcotics supplier of more than five kilograms of cocaine.  (ECF No. 129 at 2; ECF No. 131 *SEALED* at 6 ¶ 8.)  During the meeting, Defendants discussed their interest in the robbery, how the robbery could be conducted, and the possible resale value of any stolen cocaine.  (ECF No. 129 at 3; ECF No. 131 *SEALED* at 6 ¶ 8.)  At a second meeting on December 19, 2012, the confidential informant confirmed the details of the planned robbery

---

By Correspondence (ECF No. 355), Mr. Davis has requested that this Court explain which arguments were withdrawn pursuant to the Notice of Dismissal (ECF No. 314).  For clarity, therefore, this Court notes that the Notice of Dismissal (ECF No. 314) dismissed Mr. Davis's § 2255 arguments seeking relief as to his conviction under 18 U.S.C. § 922(g) in Count Five based on the Supreme Court's decision in *Rehaif v. United States*, 588 U.S. 225 (2019).  (ECF No. 315.)  His remaining § 2255 arguments, addressed in this Memorandum Opinion, thus include: (1) his challenge to his convictions in Counts Three and Four; and (2) his *pro se* argument that his trial counsel was constitutionally ineffective for failing to present evidence to contradict the testimony of a Government witness.

[5]  Like Mr. Davis, B.S. was a member of a criminal organization known as the Black Guerilla Family ("BGF"). (ECF No. 129 at 2.)

with Mr. Davis, Proctor, and Thornton.  (*Id.*; ECF No. 131 *SEALED* at 6 ¶ 9.)

On December 20, 2012, Defendants and another co-Defendant Jazman Trusty ("Trusty"), met with another confidential informant, known as B.S., at a prearranged location in Baltimore City to confirm and execute the planned robbery.  (ECF No. 131 *SEALED* at 6 ¶ 10.)  B.S. reviewed the specific details of the robbery with Defendants, and Mr. Davis confirmed to B.S. that Defendants were satisfied with receiving five kilograms of stolen cocaine.  (*Id.*)  B.S. then drove away—purportedly to conduct his portion of the plan—while Defendants drove toward the location of the planned robbery.  (ECF No. 129 at 4; ECF No. 131 *SEALED* at 6 ¶¶ 10, 11.)  Before Defendants reached the location of the robbery, a Baltimore Police Department ("BPD") Tactical Team intercepted and arrested them.  (ECF No. 129 at 4; ECF No. 131 *SEALED* at 6 ¶ 11.)  A search of Mr. Davis's person revealed a latex glove, two black gloves, and a black hat, while a search of Proctor's person uncovered a loaded .22 caliber handgun.  (ECF No. 129 at 4.)

On January 3, 2013, a federal grand jury sitting in Baltimore returned a five-count Indictment, charging Mr. Davis and his co-Defendants with (1) Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a) (Count One); (2) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count Two); (3) conspiracy to possess firearms in furtherance of a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count Three); (4) possession of a firearm in furtherance of a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four); and (5) possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g) (Count Five).  (ECF No. 28.)

Each of Mr. Davis's co-Defendants entered plea agreements.[6] (ECF Nos. 59; 65; 82; 87.)  Mr. Davis, however, pleaded not guilty and proceeded to a four-day jury trial.  *See* (ECF No. 36; ECF Nos. 90; 92; 93; 94.)  At the conclusion of trial on August 8, 2013, the jury found him guilty of all five Counts in the Indictment.  (ECF No. 101.)

Mr. Davis's advisory Sentencing Guidelines range was 188–235 months' incarceration for Counts One, Two, Three, and Five, and a 60-month mandatory minimum consecutive sentence of incarceration for the § 924(c) offense in Count Four. (ECF No. 340 at 3.)  On November 6, 2013, the Court sentenced Mr. Davis to a concurrent 235-month sentence as to Counts One, Two, and Three; a concurrent 120-month sentence as to Count Five; and a consecutive 60-month sentence as to Count Four, for a total of sentence of 295 months' imprisonment, followed by five years of supervised release.  (ECF No. 342-1 *SEALED* at 31; ECF No. 132.)   Mr. Davis appealed his case to the United States Court of Appeals for the Fourth Circuit, which affirmed this Court's judgment.[7]  (ECF No. 214.)   Since his direct appeal, Mr. Davis has sought various forms of post-conviction relief, including the pending § 2255 Motion (ECF No. 224; ECF No. 290), as supplemented by counsel (ECF Nos. 231, 241, 288) (collectively, "Mr. Davis's § 2255 Motion").[8]

---

[6]  Under these respective plea agreements, Proctor was sentenced to 132 months' incarceration, Thornton was sentenced to 120 months' incarceration, Trusty was sentenced to 97 months' incarceration, and Johnson was sentenced to 90 months' incarceration.  (ECF Nos. 127; 144; 136; 114.)  Pursuant to the same § 924(c) argument Mr. Davis raises in his § 2255 Motion, this Court later reduced the sentences of Proctor, Thornton, and Trusty. *See* (ECF Nos. 270; 276; 263.)

[7]  As the U.S. Court of Appeals for the Fourth Circuit explained in its denial of Mr. Davis's appeal, appellate "counsel for Mr. Davis filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there are no meritorious issues for appeal" but questioning various occurrences at the trial level.  (ECF No. 214 at 3.)

[8]  By consent of the parties, Mr. Davis's § 2255 Motion was previously held in abeyance for some time pending the U.S. Court of Appeal's for the Fourth Circuit's decision in *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020) *aff'd* 596 U.S. 845 (2022). *See* (ECF No. 289).  Separately, as discussed above, counsel for Mr. Davis also previously filed a Supplemental § 2255 Motion (ECF No. 295) raising challenges to his conviction under 18 U.S.C. § 922(g), but that Supplemental § 2255 Motion (ECF No. 295) has been withdrawn, (ECF No. 314).

In his *pro se* § 2255 Motion (ECF No. 224), Mr. Davis raises (1) a challenge to the constitutionality of his § 924(o) conviction in Count Three and his § 924(c) conviction in Count Four; and (2) a claim of ineffective assistance of trial counsel based on failure to present certain evidence at trial. *See generally* (ECF Nos. 224; 290).  In supplemental filings, counsel for Mr. Davis supplemented his challenges to his convictions under §§ 924(o), (c) in Counts Three and Four.  *See* (ECF Nos. 231, 241, 288).  On March 10, 2026, Mr. Davis filed with the U.S. Court of Appeals for the Fourth Circuit a Motion for Writ of Mandamus ordering this Court to rule on his challenges to his convictions under §§ 924(o), (c).  *See* (Case No. 26-1274, Dkt. Entry 3).  The Government has not responded to Mr. Davis's § 2255 Motion.  This matter is now ripe for review.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

It is well settled that a § 2255 motion is not a means to circumvent a proper ruling on

---

Mr. Davis's Motion for Compassionate Release (ECF No. 319), as supplemented by counsel (ECF No. 340) remains pending before this Court and will be addressed by separate opinion.

6

appeal. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). A § 2255 motion does not enable the defendant to "recast, under the guise of collateral attack, questions fully considered by [the Circuit Court on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Furthermore, as a general rule, "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, in a motion pursuant to § 2255, a petitioner may raise novel claims only where the petitioner demonstrates both "cause" and "actual prejudice." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509. An ineffective assistance of counsel claim requires that a petitioner satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The second, or "prejudice," prong requires a defendant to demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687. Satisfying either of the two parts of the test alone is not sufficient. Rather, a petitioner must meet both prongs of the *Strickland* test to be entitled to relief. *See id.*

### ANALYSIS

### I.    Challenge to Convictions Under 18 U.S.C. § 924(o) (Count Three) and 18 U.S.C. § 924(c) (Count Four)

Mr. Davis was convicted of conspiracy to possess firearms in furtherance of a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count Three) and

possession of a firearm in furtherance of a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four). *See* (ECF No. 101; ECF No. 132). Section 924(c) criminalizes possession of a firearm "during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) . . . ." *United States v. Dinkins*, Crim. No. JKB-19-0036, Civ. No. JKB-24-1178, 2024 WL 4202156, at *3 (D. Md. Sep. 16, 2024) (quoting 18 U.S.C. § 924(c)(1)(A)). As the U.S. Court of Appeals for the Fourth Circuit has explained, "§ 924(o) 'is simply the conspiracy form of § 924(c).'" *United States v. Wiley*, 93 F.4th 619, 628 (4th Cir. 2024) (quoting *United States v. Said*, 26 F.4th 653, 658 n.8 (4th Cir. 2022)). Thus, § 924(o) provides "[a] person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both." *Id.* at 627–28 (quoting 18 U.S.C. § 924(o)).

Section § 924(c) defines "crime of violence" in two distinct clauses known as the "force clause," § 924(c)(3)(A), and the "residual clause," § 924(c)(3)(B). *Wiley*, 93 F.4th at 628 n.2. In 2019, several years after Mr. Davis's 2013 trial and conviction under § 924(c) and § 924(o), the United States Supreme Court in *United States v. Davis*, 588 U.S. 445 (2019), held that the residual clause's definition of "crime of violence" is unconstitutionally vague. *Id.* at 470. As a result, convictions under § 924(c)—and, therefore, § 924(o)—remain constitutionally valid only to the extent they are predicated on an underlying offense that constitutes a "crime of violence" under the "force clause" *or* some other qualifying offense, such as a qualifying drug trafficking crime. In 2019, the Fourth Circuit held that conspiracy to commit Hobbs Act robbery does not constitute a crime of violence under the "force clause." *United States v. Simms*,

914 F.3d 229, 233 (4th Cir. 2019) (en banc).  Accordingly, Hobbs Act conspiracy no longer constitutes a "crime of violence" that can serve as a predicate offense for conviction under § 924(c) or § 924(o).

According to the Indictment in this case, Mr. Davis's § 924(o) conviction in Count Three and his § 924(c) conviction in Count Four were supported by predicate offenses of *both* conspiracy to commit Hobbs Act robbery, as charged in Count One, and conspiracy to distribute and possess with intent to distribute controlled substances, as charged in Count Two.  (ECF No. 28 at 4, 5; ECF No. 101; ECF No. 132 at 2).  In his § 2255 Motion, Mr. Davis contends that his convictions under § 924(o) in Count Three and § 924(c) in Count Four must be vacated because they impermissibly rely on a predicate "crime of violence" of Hobbs Act conspiracy.  *See, e.g.* (ECF No. 224 at 4–6; ECF No. 231 at 1; ECF No. 241 at 1–2; ECF No. 288 at 1; ECF No. 288-1).  Although he acknowledges that Counts Three and Four also listed as a predicate offense participation in a drug trafficking offense, he argues that the Indictment and general verdict form in his case fail to expressly establish which offense supported his § 924 convictions.  (ECF No. 231 at 6–9.)  He contends that, absent such express clarification, this Court must assume that the jury predicated its verdict on Hobbs Act conspiracy.  (ECF No. 231 at 6–9.)  For this reason, he asserts that his convictions as to Counts Three and Four must be vacated.  *See, e.g.* (ECF No. 224 at 4–6; ECF No. 231 at 1; ECF No. 241 at 1–2; ECF No. 288 at 1; ECF No. 288-1).

As discussed above, Hobbs Acts conspiracy is no longer a "crime of violence" that may support conviction under 18 U.S.C. §§ 924(c), (o).  A drug trafficking crime in violation of 21 U.S.C. § 846, however, remains a predicate "drug trafficking offense" sufficient to

9

support conviction under 18 U.S.C. §§ 924(c), (o). *See, e.g., United States v. Crawley*, 2 F.4th 257, 260, 267 (4th Cir. 2021) (denying § 2255 relief as to § 924(c) conviction where it was premised in part on participation in a drug trafficking crime, as charged under 21 U.S.C. § 846). The narrow issues as to Mr. Davis's § 2255 challenge to his convictions in Counts Three and Four, therefore, is whether the Court must assume that the jury used Hobbs Act conspiracy as the predicate offense for those convictions. As explained below, no such assumption is required, and Mr. Davis's conviction under § 846 is a valid predicate offense supporting his convictions in Counts Three and Four.

In a series of cases raising similar arguments, the U.S. Court of Appeals for the Fourth Circuit has repeatedly held that ambiguity in a general verdict form as to the predicate offense on which a jury relied to support a conviction under § 924 is *not* sufficient to justify habeas relief. *See United States v. Draven*, 77 F.4th 307, 320 (4th Cir. 2023); *United States v. Said*, 26 F.4th 653, 661–62 (4th Cir. 2022); *United States v. Tipton*, 95 F.4th 831, 851 (4th Cir. 2024). Indeed, the Fourth Circuit has instructed that, where there exists an ambiguous general verdict such that a defendant's conviction under § 924 may have rested on either a valid or invalid predicate offense, "mere uncertainty as to which predicate or predicates the jury relied on when it found the defendant guilty of the § 924(c) counts does not suffice to demonstrate ... the sort of substantial and injurious error required for habeas relief." *Tipton*, 95 F.4th at 851 (quoting *Said*, 26 F.4th at 661). Crucially, "where, as here, the jury found the defendant guilty 'of all the possible predicate theories'—i.e., 'every charge' of a substantive offense also alleged as a § 924(c) predicate—the defendant must 'point[] to ways in which those individual charges [can] be split into valid and invalid predicate.'" *Id.* (quoting *Said*, 26 F.4th at 663). Applying

such precedents, this Court has concluded that a petitioner is not entitled to § 2255 relief unless the record establishes "'not only that [the petitioner] *could* have been convicted' based on the invalid predicate, 'but also that he *was not* convicted' based on the valid predicate."[9] *United States v. Dixon*, Civ. No. ELH-21-793, Crim. No. ELH-10-0552, 2024 WL 415348, at *9 (D. Md. Feb. 2, 2024) (quoting *Said*, 26 F.4th at 661).

In this case, the general verdict form reflects that the jury separately found Mr. Davis guilty of Hobbs Act conspiracy, as charged in Count One, and conspiracy with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846, as charged in Count Two.  (ECF No. 101 at 1.)  At trial, the Court specifically instructed the jury that, in order to convict Mr. Davis of Count Three and Count Four, the government had to establish beyond a reasonable doubt "that the defendant committed a crime of violence as charged in Count One of the indictment, or that the defendant committed a drug trafficking crime as charged in Count Two . . . ."  (ECF No. 98 at 64.)   "To convict him of the § 924[(c), (o)] offense[s], the jury needed only to determine that one of those two offenses qualified as a § 924(c) predicate."  *Draven*, 77 F.4th at 319.  Mr. Davis has established only "ambiguity" as to which predicate offense—Hobbs Act conspiracy as charged in Count One or a drug trafficking crime as charged in Count Two—formed the predicate offense for his convictions in Counts Three and Four.  As the Fourth Circuit has explained, "that sort of ambiguity is not enough" to

---

[9]  At the time that Mr. Davis filed his § 2255 Motion and supplements, the Fourth Circuit had not yet explicitly addressed whether a general verdict that convicts a defendant of both the valid and invalid predicate but references both the valid and invalid predicate as the predicate offense for a § 924 conviction satisfies this standard.  Mr. Davis's argument thus rests on earlier cases in which the Fourth Circuit held that a "§ 924(c) conviction based on one valid and one invalid predicate offense remains sound" if the valid predicate was the "factual and legal basis of [the defendant's] § 924(c) conviction."  *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021).  A special verdict form specifying the valid predicate offense usually satisfies this test.  *Id.*

11

warrant relief.  *Said*, 26 F.4th at 662.  Although Hobbs Act conspiracy is no longer a valid predicate offense for convictions under 18 U.S.C. § 924(c), (o), Mr. Davis's conviction under 21 U.S.C. § 846 in Count Two remains a valid predicate supporting his convictions in Counts Three and Four.[10]  Accordingly, Mr. Davis has not met his burden to establish entitlement to relief as to his convictions in Counts Three and Four.

## II.    Claim of Ineffective Assistance of Trial Counsel

In his *pro se* Motion (ECF No. 224), Mr. Davis also asserts that his trial counsel provided constitutionally ineffective assistance because he failed to present exculpatory or impeachment evidence to contradict the testimony of a Government witness.  (ECF No. 231 at 7–9.)  As relevant to this argument, Mr. Davis asserted a defense of entrapment at trial.  "An entrapment defense has two elements: [1] government inducement and [2] the defendant's lack of predisposition to commit the crime."  *United States v. Davis*, Crim. No. WDQ-13-0002, 2013 WL 4026969, at *6 (D. Md. Aug. 6, 2013) (citing *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993)).  Although entrapment is an affirmative defense, if the defendant meets his initial burden to show inducement, the government bears the burden to "prove beyond a reasonable doubt that the defendant was predisposed to commit the crime."  *Id.* (citing *United States v. Jones*, 976 F.2d 176, 179 (4th Cir. 1992)).[11]  In his Motion, Mr. Davis explains that the Government established that he was predisposed to commit the crime in part by offering testimony from confidential source "B.S."  (ECF No. 224 at 8.)  B.S. testified extensively at

---

[10]  Importantly, the fact that the jury "*actually convicted* [Mr. Davis] of all the possible predicate theories" reduces the ambiguity in the general verdict form.  *Said*, 26 F.4th at 663 (emphasis in original); *accord Tipton*, 95 F.4th at 851.

[11]  Notably, a defendant is only entitled to an entrapment instruction where he has met his initial burden to produce some evidence of government inducement.  *United States v. Osborne*, 935 F.2d 32, 37–38 (4th Cir. 1991).  In this case, Mr. Davis received an entrapment instruction.

trial and stated that he met with Petitioner to discuss kidnapping a child for ransom.  (*Id.* at 8.)

Mr. Davis contends, however, that he did not attend any such meeting, and he was on home

monitoring under the supervision of the Maryland Department of Correctional Services during

the time of the purported meeting.  (*Id.*)  He asserts that his trial counsel was constitutionally

ineffective to the extent he did not present records from the home monitoring GPS system

that would have shown that B.S.'s testimony about that meeting was inaccurate.[12]  (*Id.*)

At Mr. Davis's trial, B.S. testified that both he and Mr. Davis were members of a gang

known as the Black Guerilla Family ("BGF"), but in November 2012, B.S. began serving as

an informant to the federal Drug Enforcement Administration ("DEA").  (ECF No. 168 at

37–38, 42–43.)  He testified that several BGF members, including Mr. Davis, gathered to

discuss a plan to kidnap the son of a local drug dealer.  (ECF No. 168 at 44–45.)  During cross-

examination, B.S. testified that, at the time this meeting occurred, Mr. Davis was released on

parole but was required to wear a GPS monitor because he had violated the terms of his parole.

(*Id.* at 144–46.)  He further testified that Mr. Davis was wearing the GPS monitor during the

meeting, which occurred outside in the middle of the block near Penrose Avenue and Pulaski

Highway.  (*Id.* at 145.)  The Government presented testimony from DEA Special Agent

Malone ("Special Agent Malone") who testified that law enforcement verified the information

---

[12] Mr. Davis frames his counsel's failure to present such evidence as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).  *Brady* and *Giglio* pertain to the Government's duty to disclose possible impeachment or exculpatory evidence to the defense, but Mr. Davis asserts that his defense counsel failed to present evidence about a government witness at trial.  Thus, neither *Brady* nor *Giglio*—both of which impose duties of disclosure upon the prosecution—apply here, where Mr. Davis argues that his defense counsel failed to present certain impeachment evidence at trial.  The Court instead liberally construes Mr. Davis's ineffective assistance of counsel claim to argue that his trial counsel failed to present evidence relevant to his defense at trial.

that B.S. provided to them.  *See* (ECF No. 169 at 16–19 (explaining process of corroborating information that B.S. provided about Mr. Davis)).

During closing arguments, defense counsel carefully took the jury through each element of Mr. Davis's entrapment defense.  (ECF No. 174 at 36, 40–49.)  As to the "predisposition" element, he argued that Mr. Davis was *not* predisposed to commit the planned robbery.  (*Id.* at 44–49.)  Notably, he argued that if Mr. Davis had been present at the discussion about kidnapping a drug dealer's child, then the Government would have presented GPS monitoring evidence to corroborate his location during that discussion.  (*Id.* at 44–45.) In Rebuttal, the prosecutor asserted that the Government could not produce such GPS monitoring evidence because B.S. did not remember the exact date—some six months earlier—on which the conversation about the kidnapping had occurred.  (*Id.* at 53–54.)  The Court then instructed the jury as to the elements of an entrapment defense.  (ECF No. 98 at 76–77).

A petitioner may properly assert a freestanding ineffective assistance of counsel claim for the first time in a § 2255 motion. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991).  To raise a Sixth Amendment claim for ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires him to show: (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. In applying *Strickland*, it is unnecessary to address both prongs if the petitioner makes "an insufficient showing on one." *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be denied solely on a deficiency in either the

14

"performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697. In this case, Mr. Davis has not shown that his defense was prejudiced by his trial counsel's failure to present GPS location monitoring records.

Mr. Davis argues that his trial counsel's failure to present location monitoring evidence prejudiced his entrapment defense because, absent such evidence, his defense did not effectively respond to the Government's assertion that he was predisposed to commit the robbery at issue. As the United States Court of Appeals for the Fourth Circuit has explained, "[i]t is settled law that the government may provide the opportunities or facilities for the commission of an offense by one otherwise predisposed to criminal activity." *United States v. Osborne*, 935 F.2d 32, 37 (4th Cir. 1991) (citing *United States v. DeVore*, 423 F.2d 1069, 1070 (4th Cir. 1970)). "Thus, if a defendant's predisposition [to commit the crime] is established, the defense of entrapment may not be based on government misconduct." *Id.* (citing *United States v. Akinseye*, 802 F.2d 740, 744 (4th Cir. 1986)). A defendant's "predisposition" is based on his "state of mind before government agents make any suggestion that he shall commit a crime[,] . . . [but] a finding of specific prior contemplation of criminal conduct is not required in order to determine that the defendant was predisposed." *Id.* (citing *United States v. Hunt*, 749 F.2d 1078, 1085 (4th Cir. 1984) *cert. denied* 472 U.S. 1018 (1985)). Put differently, "the government does not entrap a defendant, even if he does not specifically contemplate the criminal conduct prior to [the Government's] 'suggestion,' if 'his decision to commit the crime is the product of his own preference and not the product of government persuasion.'" *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004) (quoting *Osborne*, 935 F.2d at 38); *accord United States v. Ramos*, 462 F.3d 329, 334–35 (4th Cir. 2006).

Even assuming, without deciding, that Mr. Davis's trial counsel's failure to present the GPS monitoring evidence "fell below an objective standard of reasonableness" as required to establish deficient performance, *Strickland*, 466 U.S. at 688, Mr. Davis cannot show that his defense was prejudiced by this failure. To satisfy the prejudice component of the *Strickland* analysis, a petitioner must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687). That is "[w]ith respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694). "In evaluating the potential prejudice to Petitioner from his counsel's alleged deficiencies, a '[c]ourt must consider the totality of the evidence.'" *Royal v. United States*, Civ. No. AQ-13-386, Crim. No. 09-48, 2013 WL 3868152, at *4 (D. Md. July 24, 2013) (quoting *United States v. Crum*, 65 F. Supp. 2d 348, 351 (D. Md. 1999)). The Fourth Circuit has recognized that "overwhelming evidence introduced at trial" may render a petitioner unable to meet his burden to show a reasonable probability that the outcome at trial would have been different absent counsel's error. *Waye v. Townley*, 871 F.2d 18, 21 (4th Cir. 1989); *see also United States v. Lomax*, Crim. No. WMN-10-0145, Civ. No. 13-2375, 2014 WL 1340065, at *2, *3 (D. Md. Apr. 2, 2014) (explaining that "overwhelming evidence against Defendant . . . renders it impossible for [him] to meet the *Strickland* prejudice prong").

As explained above, the Government may establish predisposition overcoming a defense of entrapment even absent evidence that the defendant previously contemplated any crime. *Osborne*, 935 F.2d at 37. "[T]he focus of the predisposition inquiry is on 'whether the

16

defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime."' *United States v. McClaurin*, 764 F.3d 372, 381 (4th Cir. 2014) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). Information relevant to this inquiry may include "aspects of the defendant's character and criminal past," *id.*, as well as the "defendant's ready response to the inducement offered," *Hunt*, 749 F.2d at 1085. In the context of *Strickland* claims based on failure to properly investigate or raise an entrapment defense, district courts have repeatedly confirmed that "overwhelming evidence of predisposition" precludes the showing of prejudice required to demonstrate ineffective assistance of counsel. *See, e.g.*, *United States v. Eshetu*, 703 F. Supp. 3d 26, 39–40 (D.D.C. 2023) (holding no prejudice under *Strickland* based on failure to investigate entrapment defense because investigation would not have overcome "overwhelming predisposition evidence" at trial); *United States v. Robles*, 814 F. Supp. 1233, 1248–49 (E.D. Pa. 1993) (concluding defendant failed to show prejudice under *Strickland* where "an entrapment defense, even if asserted at trial, would likely have been unsuccessful in light of the overwhelming evidence of the defendants' willingness to commit this crime"); *United States v. Alexander*, Crim. No. 14-126-JWD-EWD, 2019 WL 5268547, at *6 (M.D. La. Oct. 17, 2019) (explaining petitioner could not show prejudice under *Strickland* due to "'ample' and 'overwhelming' evidence of predisposition").

In this case, there was overwhelming evidence at trial of Mr. Davis's predisposition or willingness to commit the planned robbery. Specifically, B.S. testified regarding Mr. Davis's active participation in the criminal gang BGF, including Mr. Davis's prior criminal involvement for which he had been incarcerated, paroled, and required to wear a GPS

monitoring device.  B.S. further testified that, when B.S. offered to Mr. Davis the opportunity to execute the planned robbery, Mr. Davis responded by saying that "Man, I been asking you for somebody to do that to anyway as far as on your side."  (ECF No. 168 at 57.)  In other words, B.S. testified that Mr. Davis had already expressed interest in conducting such a robbery of a drug dealer to acquire more drugs.  (*Id.* at 57–58.)  This testimony was consistent with B.S.'s statements that BGF members were already interested in robbing a drug dealer known as "Big Sam" based on an ongoing drug dispute between Big Sam and BGF.  (*Id.* at 50–53.) Specifically, B.S. testified that before he informed the DEA about the conflict with Big Sam and before he presented to Mr. Davis any opportunity for a robbery, Mr. Davis informed BGF members that he knew one of Big Sam's girlfriends and could use that information to locate him.  (*Id.* at 53–54.)

Additionally, Special Agent Malone testified that Mr. Davis stated during a police interview that the Defendants "all decided as a group that they would take the offer" to participate in the planned robbery.  (ECF No. 169 at 23–24.)  The evidence at trial established that B.S. first presented the idea of conducting the robbery at the beginning of December, and Defendants were arrested for the robbery on December 20, 2012.  (ECF No. 168 at 58, 141, 218–219 (stating B.S. suggested robbery on December 11th or December 12th).)  According to Special Agent Malone's testimony, Mr. Davis corroborated this timeline in his statements to law enforcement.  (ECF No. 169 at 23–24.)  Specifically, Mr. Davis told law enforcement that Defendants agreed to participate in the robbery on December 19, 2012, the day before they were arrested.  (*Id.*)  Special Agent Malone further testified that the Department of Corrections confirmed to law enforcement that Mr. Davis "was actually a self-admitted BGF

18

member," meaning that Mr. Davis "actually confirmed that he was a member of the Black Guerilla Family." (ECF No. 169 at 18.) Finally, the Government presented evidence from Mr. Davis's co-Defendant Johnson, who testified that Mr. Davis participated in conversations to plan the robbery without expressing any reservation or concern. (ECF No. 168 at 224.)

All this evidence—none of which pertained to any alleged kidnapping plan—established Mr. Davis's predisposition to commit the robbery at issue. As an initial matter, the testimony regarding the kidnapping related to an entirely separate crime and, as the Fourth Circuit has made clear, the government need not show "prior contemplation of criminal conduct" to establish predisposition. *Osborne*, 935 F.2d at 37. More importantly, however, the Government presented ample evidence from sources other than B.S. of Mr. Davis's willingness to participate in the robbery, including Mr. Davis's own statements to law enforcement officers in which he expressed that he and his co-Defendants "decided as a group that they would take the offer" to commit the robbery and Special Agent Malone's testimony about Mr. Davis's confirmed membership in BGF. (ECF No. 169 at 23–24.) This testimony was further corroborated by Johnson's testimony that Mr. Davis participated in the planning of the robbery without expressing any concern or reservation about the plan. (ECF No. 168 at 224.) Such "ready response to the inducement offered," *Hunt*, 749 F.2d at 1085, and confirmed participation in a criminal organization demonstrate predisposition to commit the robbery at issue, *see McClaurin*, 764 F.3d at 380.

Thus, even assuming GPS evidence would have impeached B.S. as a witness and contradicted his testimony regarding Mr. Davis's participation in any kidnapping plan, the jury heard ample other evidence supporting Mr. Davis's predisposition to participate in the robbery

in this case.[13]  In the face of such "overwhelming evidence" of Mr. Davis's predisposition to commit the robbery, Mr. Davis has not shown a reasonable probability that the outcome at trial would have been different if his counsel *had* presented the GPS location monitoring evidence.  At most, such evidence would have established that Mr. Davis was not present at the meeting to discuss the kidnapping, which would have diminished the credibility of B.S. as a witness and would have removed the kidnapping as a possible basis for Mr. Davis's predisposition to commit the robbery.  Yet, the Government presented overwhelming additional evidence—including (1) testimony about Mr. Davis's *own statements* to law enforcement officers in which he evinced his willingness to participate in the crime; (2) testimony from a co-Defendant that Mr. Davis participated without reservation in the planning of the robbery; and (3) testimony confirming that Mr. Davis had previously admitted his membership in BGF—of Mr. Davis's predisposition to commit the crime.  Mr. Davis has not established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[14]  *Harrington*, 562 U.S at 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *see also Eshetu*, 703 F. Supp. 3d at 39–40.

---

[13] The jury sent the Court a note requesting clarification of the elements required to show entrapment.  (ECF No. 174 at 113.)  They asked whether "all three conditions . . . of entrapment, have to be met to constitute entrapment."  (*Id.*; ECF No. 99.)  Counsel for both parties agreed to answer that "the defense of entrapment requires all three of the conditions . . . in the first paragraph [of the entrapment jury instruction provided]." (ECF No. 174 at 114.)  This request for clarification demonstrates that the jury carefully considered and rejected Mr. Davis's entrapment defense.  *See, e.g.*, *Eyck v. Lee*, 19-CV-6924 (MKV) (RWL), 2020 WL 8671942, at *4, 17–18 (S.D.N.Y. Oct. 9, 2020) (denying ineffective assistance claim based on failure to present evidence as to entrapment even where jury asked for clarification of entrapment instruction).

[14] Although failure to demonstrate prejudice alone precludes any finding of ineffective assistance of counsel, the Court notes that Mr. Davis likely also has not established that his trial counsel's performance was deficient. Generally, where the failure to present evidence is a reasonable strategic decision, it does not constitute deficient performance.  *See Wiggins v. Smith*, 539 U.S. 510, 521, 526–28 (2003); *see Byram v. Ozmint*, 339 F.3d 203, 209–10 (4th Cir. 2003) (concluding performance was not deficient based on failure to offer expert testimony where counsel concluded testimony could have harmed defense). In this case, Mr. Davis's counsel declined to offer

## CONCLUSION

For the reasons stated above, Mr. Davis's Motion to Reduce or Vacate Sentence Pursuant to 28 U.S.C. § 2255 (ECF Nos. 224, 231, 241, 288, 290) is DENIED. Separately, Mr. Davis's Motion to Appoint Counsel (ECF No. 225) is DENIED AS MOOT.

"Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant." *Jackson v. United States*, Civ. No. PJM-12-421, Crim. No. PJM-06-306, 2012 WL 869080, at *1 (D. Md. Mar. 13, 2012). "A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, "the 'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). Because Mr. Davis's Motion provides no basis for issuance of a Certificate of Appealability, a Certificate of Appealability is DENIED.

A separate Order follows.

Date: April 10th, 2026

/s/
Richard D. Bennett
United States Senior District Judge

---

GPS evidence but argued that the Government failed to present that evidence. Such trial strategy likely "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

21