## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-13-0002 |
| ANTONIO DAVIS, | * | |
| *Defendant.* | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

On August 8, 2013, a jury found Defendant Antonio Davis ("Defendant" or "Mr. Davis") guilty of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and three related firearms offenses.  (ECF No. 101.)  On November 6, 2013, the Court sentenced Mr. Davis to a total term of 295 months of incarceration, followed by five years of supervised release.[1]  (ECF No. 342-1 *SEALED* at 31; ECF No. 132.)  On July 22, 2015, the Court reduced Mr. Davis's sentence to 248 months based on Amendment 782 to the Sentencing Guidelines.[2]  (ECF No. 201, ECF No. 202 *SEALED*.)  Mr. Davis is now 45 years old and currently incarcerated at Coleman Medium FCI in Sumterville, Florida, with a projected release date of February 19, 2031.  *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search by register number: 56068-037).

---

[1]  At the time of Mr. Davis's sentencing, his case was assigned to Judge Quarles of this Court.  This matter was subsequently reassigned to the undersigned judge in 2016.

[2]  Amendment 782 to the United States Sentencing Guidelines lowered the base offense levels assigned to different quantities of cocaine.  U.S.S.G. supp. app. C, amend. 782 (effective Nov. 1, 2014).  The Sentencing Commission gave Amendment 782 retroactive effect.  U.S.S.G. §§ 1B1.10(d).  As a result, Mr. Davis's total offense level was reduced two points based on the cocaine quantity in his case.  (ECF No. 202 *SEALED*.)

Presently pending before this Court is Defendant's *pro se* Motion for Compassionate Release (ECF No. 319) and Supplement (ECF No. 340) (collectively, "Motion for Compassionate Release" or "Mr. Davis's Motion"), filed through appointed counsel, *see* (ECF No. 322).[3] The Government has responded in Opposition (ECF No. 345), and Mr. Davis has replied (ECF No. 347). In his Motion, Mr. Davis asserts that his health conditions, the risk of COVID-19, the length of the sentence he received compared to the sentence he would likely receive today, and sentencing disparities with his co-conspirators constitute "extraordinary and compelling" reasons for compassionate release. *See generally* (ECF Nos. 319; 340). The Court has reviewed the relevant filings, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, Defendant's Motion for Compassionate Release (ECF Nos. 319, 340) is GRANTED IN PART. Specifically, Mr. Davis's Motion is GRANTED to the extent it seeks a sentence reduction, and Mr. Davis's sentence of incarceration is reduced from 248 months to 188 months.

## BACKGROUND

On December 12, 2012, a confidential informant working with the Drug Enforcement Administration met with Mr. Davis, Rodney Proctor ("Proctor"), Christopher Thornton ("Thornton"), and Michael Johnson ("Johnson") (collectively "Defendants") and informed them that he was a drug trafficker who was interested in robbing his narcotics supplier of more

---

[3] Also pending are Mr. Davis's Motion to Vacate, Reduce, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF Nos. 224, 231, 241, 288, 290); his Amendment 821 Motion (ECF No. 349); and his Motion to Appoint Counsel as to his § 2255 Motion (ECF No. 225). On March 9, 2026, Mr. Davis filed with the U.S. Court of Appeals for the Fourth Circuit a Petition for Writ of Mandamus for failure to respond, *see* (Case No. 25-183, D.E. 2), to his § 2255 Motion, (ECF Nos. 224; 231; 241; 288; 290). His Motion to Vacate, Reduce, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF Nos. 224, 231, 241, 288, 290) and related Motion to Appoint Counsel (ECF No. 225) will be addressed by separate opinion.

than five kilograms of cocaine. (ECF No. 129 at 2; ECF No. 131 *SEALED* at 6 ¶ 8.) During the meeting, Mr. Davis and his co-Defendants agreed to commit the robbery. (ECF No. 129 at 3.) Shortly after the meeting, a different confidential source overheard Mr. Davis and his co-Defendants discussing the need to kill the confidential informant after the robbery. (*Id.*) At a second meeting on December 19, 2012, the confidential informant confirmed the details of the planned robbery with Mr. Davis and his co-Defendants. (*Id.*; ECF No. 131 *SEALED* at 6 ¶ 9.) On December 20, 2012, the confidential informant, Mr. Davis, and co-Defendants, including Jazman Trusty ("Trusty"), drove toward the location of the planned robbery. (*Id.* at 4.) Before they arrived, a Baltimore Police Department ("BPD") Tactical Team intercepted and arrested Mr. Davis and his co-Defendants. (ECF No. 129 at 3.) BPD officers searched their persons and recovered a loaded .22 caliber pistol from Proctor. (*Id.*)

On January 3, 2013, a federal grand jury sitting in Baltimore returned a five-count Indictment (ECF No. 28) charging Mr. Davis and his co-Defendants with (1) Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a) (Count One); (2) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count Two); (3) conspiracy to possess firearms in furtherance of a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count Three); (4) possession of a firearm in furtherance of a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four); and (5) possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g) (Count Five). (ECF No. 28.) Each of Mr. Davis's co-Defendants entered plea agreements.[4] (ECF Nos. 59;

---

[4] Under these respective plea agreements, Proctor was sentenced to 132 months' incarceration, Thornton was sentenced to 120 months' incarceration, Trusty was sentenced to 97 months' incarceration, and Johnson was sentenced to 90 months' incarceration. (ECF Nos. 127; 144; 136; 114.) Pursuant to the same § 924(c)

65; 82; 87.)  Mr. Davis, however, pleaded not guilty and proceeded to a four-day jury trial.  *See* (ECF Nos. 36; 90; 92; 93; 94.)  At the conclusion of trial on August 8, 2013, the jury found Mr. Davis guilty of all five Counts of the Indictment.  (ECF No. 101.)

Mr. Davis's advisory Sentencing Guidelines range was 188–235 months' incarceration for Counts One, Two, Three, and Five, and a 60-month mandatory minimum consecutive sentence of incarceration for the § 924(c) offense in Count Four. (ECF No. 340 at 3.)  On November 6, 2013, this Court sentenced Mr. Davis to a concurrent 235-month sentence on Counts One, Two, and Three; a concurrent 120-month sentence on Count Five; and a consecutive 60-month sentence on Count Four, for a total term of 295 months' incarceration, followed by five years of supervised release.  (ECF No. 342-1 *SEALED* at 31; ECF No. 132.)  Mr. Davis appealed his case to the United States Court of Appeals for the Fourth Circuit, which affirmed this Court's decision.  (ECF No. 214.)  Since his direct appeal, Mr. Davis has sought various forms of post-conviction relief, *see* (ECF Nos. 224–226; 231; 288, 290, 349),[5] including the instant Motion for Compassionate Release (ECF Nos. 319; 340.)  On July 22, 2015, the Court reduced Mr. Davis's sentence to 248 months based on Amendment 782 to the Sentencing Guidelines. (ECF Nos. 201, 202 *SEALED*.)  This matter is now ripe for review.

---

arguments Mr. Davis raises in his § 2255 Motion, this Court later reduced the sentences of Proctor, Thornton, and Trusty.  *See* (ECF Nos. 270; 276; 263.)

[5]  As noted above, Mr. Davis has filed a *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 224), and various Supplements (ECF Nos. 231, 286, 288, 290).  In 2020, those § 2255 filings were held in abeyance "pending the resolution of *United States v. Taylor*, No. 19-7616, in the Fourth Circuit."  (ECF No. 289 at 1.) Subsequently, by consent, the parties agreed to dismiss Mr. Davis's counsel's Supplemental § 2255 Motion (ECF No. 295), which challenged his conviction in Count Five under *Rehaif v. United States,* 588 U.S. 225 (2019). *See* (ECF No. 315 (dismissing § 2255 motion filed at ECF No. 295).  On March 9, 2026, Mr. Davis filed a Writ of Mandamus for failure to respond, *see* (Case No. 26-1274, D.E. 2), to his remaining § 2255 Motion, (ECF Nos. 224, 231, 241, 288, 290). Mr. Davis's § 2255 Motion will be addressed by separate Memorandum Opinion and Order.

## STANDARD OF REVIEW

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison.  Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court.  With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.* § 3582(c)(1)(A).  Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a).  *Id.* § 3582(c)(1)(A); *see United States v. Malone*, 57 F.4th 167, 176 (4th Cir. 2023).

## ANALYSIS

### I.    Administrative Exhaustion

Mr. Davis has exhausted his administrative remedies.  Before a defendant may file a Motion for Compassionate Release, 18 U.S.C. § 3582(c)(1)(A) requires him to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or to demonstrate that thirty days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  In this case, the

warden denied Mr. Davis's request for compassionate release on March 8, 2022. (ECF No. 342-3 *SEALED*.)  Accordingly, he has exhausted his administrative remedies.

## II.    Extraordinary and Compelling Circumstances

To grant compassionate release, a federal court must find that there are "extraordinary and compelling reasons" warranting relief. 18 U.S.C. § 3582(c)(1)(A)(i).  The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A).  28 U.S.C. § 994(t).  The Commission has identified six possible circumstances that, viewed separately or together, may establish "extraordinary and compelling reasons" for a sentence reduction:

> (1) a serious medical circumstance of the defendant;
> (2) a defendant who is 65 years old that suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
> (3) the death or incapacitation of an immediate family member;
> (4) the defendant being a victim of abuse while in custody;
> (5) other reasons of similar gravity as (1)–(4); and
> (6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6).

In his Motion for Compassionate Release, Mr. Davis proffers four reasons that he contends present "extraordinary and compelling reasons" for relief: (1) an injury he suffered while incarcerated; (2) circumstances related to the COVID-19 Pandemic; (3) a change in law producing a gross disparity between the sentence he received and that he would likely receive today; and (4) the disparity between his sentence and those of his co-conspirators. *See generally* (ECF Nos. 319; 340).  In Opposition (ECF No. 345), the Government contends that these reasons do not suffice to demonstrate entitlement to relief under U.S.S.G. § 1B1.13(b).

6

As a threshold matter, this Court must address the applicability of the November 2023 amendments to U.S.S.G. § 1B1.13(b)(1) in Mr. Davis's case.  Mr. Davis filed his Motion and Supplement, and the parties completed briefing thereon, before the November 2023 amendments took effect.[6]  Prior to the November 2023 amendments, "[t]he Guidelines '[were] not directly applicable to defendant-filed motions' under § 3582(c)." *United States v. Whisonant*, Crim. No. ELH-17-191, 2023 WL 4243232, at *8 (D. Md. June 26, 2023) (quoting *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021)).  In May 2023, however, the Sentencing Commission promulgated amendments to § 1B1.13, which, effective November 2023, are "expressly applicable to defendant-filed motions under § 3582(c)(1)(A)." *United States v. Samuel*, Crim. No. ELH-16-0117, 2023 WL 8650366, at *5 (D. Md. Dec. 14, 2023); *see also United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024) (discussing binding Guidelines amendments defining an "extraordinary and compelling" reason for compassionate release). The U.S. Court of Appeals for the Fourth Circuit has determined that where, as here, a defendant filed a motion for compassionate release before the amendments took effect in November 2023, but the district court addresses the motion after that effective date, "the amended policy statement does indeed apply to [the defendant's] motion." *United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025).  Accordingly, this Court evaluates Mr. Davis's Motion pursuant to U.S.S.G. § 1B1.13 as amended.

### A.  Medical Circumstances Under § 1B1.13(b)(1)

Mr. Davis argues that two serious medical circumstances require compassionate release: (1) "a severe injury to his head" and a residual injury to his left eye resulting in poor

---

[6] For this reason, Mr. Davis argues that U.S.S.G. § 1B1.13(b)(1) does not apply to defendant-filed motions for compassionate release.  *See* (ECF No. 340 at 5–6).

vision and recurring migraines, (ECF No. 340 at 6–9); and (2) the health risks he faces based on his underlying medical conditions and the threat of infection with COVID-19, (*id.* at 9–14). Medical circumstances of a defendant can constitute extraordinary and compelling reasons where a defendant is "suffering from a terminal illness," U.S.S.G. § 1B1.13(b)(1)(A); where medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," *id.* § 1B1.13(b)(1)(B); where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C); or where a defendant faces imminent risk of being affected by an "infectious disease" or an "ongoing public health emergency" under certain circumstances, *id.* § 1B1.13(b)(1)(D). In this case, Mr. Davis's medical conditions are not terminal, and he does not claim that his medical circumstances substantially diminish his ability to provide self-care in a correctional facility. Rather, under the amended Sentencing Guidelines, Mr. Davis appears to assert that he faces a serious deterioration in health absent specialized care and an imminent risk of infectious disease in the form of COVID-19. The Court addresses each condition in turn.

First, Mr. Davis explains that he suffered a severe injury to his head in August 2018 after "a spoiled can of carrots exploded as he unloaded [a] pallet as part of his work detail." (ECF No. 340 at 6; ECF No. 342-7 *SEALED* at 1; ECF No. 342-8 *SEALED* at 29–31.) Following the accident, Mr. Davis lost consciousness and suffered blunt-force trauma damage to his retina causing ongoing loss of vision, migraine headaches, and dizzy spells. (ECF No. 340 at 6.) He asserts that the "[Bureau of Prisons ("BOP")] has not provided . . . appropriate

care for the trauma and injuries resulting from the workplace accident." (ECF No. 340 at 7.) Specifically, he contends that he suffers ongoing headaches and partial loss of vision that remain unaddressed due to inadequate medical care from BOP. (*Id.*; ECF No. 342-7 *SEALED* at 2 (Letter from Dr. W. Anthony Gerard, MD).)

Although inadequate medical treatment while incarcerated may justify compassionate release where it amounts to "gross mismanagement of [the defendant's] serious health conditions," *United States v. English*, No. 2:19-CR-20164-TGB-EAS-1, 2022 WL 17853361, at *5 (E.D. Mich. Dec. 22, 2022) (collecting cases), the Bureau of Prisons is not required to provide medical care that is necessarily equivalent to that available outside of prison, *see United States v. Purpera*, Crim. Nos. 7:18-cr-00019, 7:19-cr-00016, 2024 WL 329541, at *3 (W.D. Va. Jan. 29, 2024). Generally, therefore, appointments to provide treatment, follow-up appointments to monitor an injury, and evaluation by outside experts constitute adequate medical care such that no compassionate release is warranted. *See, e.g.*, *United States v. Scarborough*, No. 1:12-CR-43, 2024 WL 2832711, at *3 (M.D.N.C. June 4, 2024) *aff'd* 2024 WL 4824236 (4th Cir. Nov. 19, 2024) (denying compassionate release after skin cancer diagnosis where defendant had lesions removed, received ointment for affected areas, and was scheduled for a follow-up dermatology visit); *United States v. Crawford*, No. 1:07CR317-1, 2019 WL 6615188, at *5 (M.D.N.C. Dec. 5, 2019) (denying compassionate release where defendant received follow-up appointments and medical testing); *United States v. Olin*, Crim. No. 3:22-653-MGL-1, 2025 WL 1126121, at *1–3 (D.S.C. Apr. 16, 2025) (finding no extraordinary and compelling reason for relief based on medical condition where defendant received appointments and follow-up care for kidney disease); *United States v. Brown*, Crim. No. JKB-

23-0049, 2026 WL 679525, at *1 (D. Md. Mar. 11, 2026) (finding no extraordinary and compelling reason for relief based on "serious medical problems" where defendant's "medical records demonstrate that he has received consistent care while in BOP custody").

In this case, Mr. Davis has received adequate medical care for his workplace injury both immediately after his injury and in the years since. Immediately after the injury, he was "evaluated and triaged by prison staff . . . and then sent by ambulance to Geisinger Medical Center." (ECF No. 342-7 *SEALED* at 1.) Upon his return from outside medical treatment, Mr. Davis was seen for follow-up care, including multiple follow-up visits in the days immediately after the injury, (ECF No. 342-8 *SEALED* at 21–27, 28–31), and later follow-up visits related to migraine headaches and vision concerns, (*id.* *SEALED* at 32–34, 19–20, 9–10). He has also received follow-up treatment from care providers outside of BOP, including outside trips to a neurologist and an ophthalmologist at Geisinger Eye Clinic. (*Id.* *SEALED* at 15–17; ECF No. 342-7 *SEALED* at 2–3.) This immediate treatment and ongoing monitoring of his injury and symptoms, including off-site visits to care providers outside of BOP, constitutes adequate medical treatment. *See, e.g.*, *Crawford*, 2019 WL 6615188, at *5; *United States v. Simmons*, Crim. No. ELH-20-0451, 2025 WL 1359210, at *35–36 (D. Md. May 9, 2025) (denying compassionate release where defendant with Crohn's disease received regular evaluations by private gastroenterology specialist); *United States v. Hunter*, No. 3:12-cr-289-MOC, 2024 WL 3464039, at *5 (W.D.N.C. July 18, 2024), *aff'd*, 2025 WL 2506070 (4th Cir. Sept. 2, 2025) (denying compassionate release where defendant received evaluation by a neurologist, bloodwork testing, and medications). Furthermore, Mr. Davis has not shown that

10

he is at risk of significant health decline or death as a result of inadequate treatment.[7] *Cf.*

*United States v. Burr*, No. 1:15-CR-362-1, 2022 WL 17357233, at \*6 (M.D.N.C. Dec. 1, 2022)

(collecting cases in which severe treatment delays for serious conditions such as invasive

cancer and spinal injury constituted extraordinary and compelling reason for relief). As such,

his head injuries do not constitute extraordinary and compelling reasons for release.

Second, Mr. Davis raises health risks associated with COVID-19 as a basis for relief.

(ECF No. 340 at 9–14.) The 2023 amendments to U.S.S.G. § 1B1.13, particularly U.S.S.G. §

1B1.13(b)(1)(D), reinforce that a defendant's heightened susceptibility to COVID-19 may

constitute an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *United*

*States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024). As Judge Hollander of this Court has noted,

however, "the coronavirus is 'not tantamount to a get out of jail free card.'" *United States v.*

*Hiller*, Crim. No. ELH-18-0389, 2020 WL 2041673, at \*4 (D. Md. Apr. 28, 2020)

(quoting *United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at \*3 (D. Md.

Mar. 24, 2020)). Accordingly, for COVID-19 to constitute an "extraordinary and compelling"

circumstance, the defendant must prove that he has a "particularized susceptibility" to the

illness. *See, e.g.*, *United States v. Petway*, No. 21-6488, 2022 WL 168577, at \*2 (4th Cir. Jan. 19,

---

[7] Mr. Davis contends that he needs a second opinion from an ophthalmologist and a neurologist or a neuro-ophthalmologist to determine the extent of the damage he suffered to his vision and brain from his injuries. (ECF No. 342-7 \*SEALED\* at 3–4.) He does not assert, however, that the failure to receive a second opinion puts him at risk of significant health decline or death. (*Id.* (discussing long-term injuries resulting from eye injuries generally but failing to state that Mr. Davis faces a risk of health decline based on his injury).) Additionally, this Court has held that "displeasure with the quality of the medical care . . . provided by BOP is not sufficient to show an extraordinary and compelling reason for compassionate release" especially where "no evidence" shows that the defendant's health is deteriorating. *United States v. Ayyad*, 2024 WL 3424083, at \*21–22 (D. Md. July 15, 2024).

2022).  The defendant also must prove that his "risk of contracting COVID-19 is higher in prison than outside of it . . . ." *Davis*, 99 F.4th at 655.

In this case, Mr. Davis represents that he has certain medical conditions which place him "at a heightened risk of severe symptoms" of COVID-19—namely, existing cardiovascular disease and a risk of developing diabetes due to elevated blood pressure and a family history of diabetes.  (ECF No. 340 at 9.)  Mr. Davis does not indicate which cardiovascular disease he has, and he is vaccinated against COVID-19.[8]  (*Id.*; ECF No. 342-9 *SEALED* at 104.)  Further, Mr. Davis has not shown that there is a higher risk that he will contract COVID-19 in prison.  First, COVID-19 is no longer classified as a national pandemic. *See* Pub. L. No. 118-3, 137 Stat. 6 (2023) (terminating designation of COVID-19 as a national emergency); *see also United States v. Deleon*, Crim. No. 16-cr-00267-LKG, 2024 WL 4555724, at *9 (D. Md. Oct. 23, 2024) (finding no extraordinary or compelling reason where "the Petitioner is at no greater risk from COVID-19 than other inmates and members of the general public who have similar underlying health conditions" as COVID-19 is no longer a national pandemic).  Second, Coleman Medium FCI, where Mr. Davis is incarcerated, is not "affected or at imminent risk of being affected by" an "ongoing outbreak" of COVID-19.  U.S.S.G. § 1B1.13(b)(1)(D).  The most recent BOP data reveals that there were zero open cases of COVID-19 at FCI Coleman, and 3,296 of the institution's 5,934 inmates are fully vaccinated

---

[8] This Court has also rejected similar arguments for compassionate release by defendants asserting pre-diabetes and other conditions.  *See, e.g.*, *United States v. Watts*, Crim. No. RDB-18-0271, 2024 WL 4443182, at *10–11 (D. Md. Oct. 8, 2024) (finding no extraordinary and compelling circumstances despite being defendant being more susceptible to COVID-19 because he was overweight and pre-diabetic, and had lung scarring); *United States v. Anderson*, Crim. No. RDB-19-0553, 2024 WL 3090466, at *9–10 (D. Md. June 21, 2024) (finding no extraordinary and compelling circumstances in part because defendant was fully vaccinated, even though defendant's obesity, hypertension, and asthma made him more susceptible to COVID-19).

against COVID-19. *Inmate COVID-19 Data*, FEDERAL BUREAU OF PRISONS (Jan. 21, 2025), https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp [https://perma.cc/E299-VVQA]. Accordingly, Mr. Davis has not established an extraordinary and compelling reason warranting compassionate release based on either of his asserted medical conditions.

### B. Unusually Long Sentence Under § 1B1.13(b)(6)

Mr. Davis next asserts that he is entitled to compassionate release based on a change in the law producing a "disparity between the sentence imposed in 201[3] for [his] convictions and the sentence that the Court would likely impose today." (ECF No. 340 at 17.) This argument addresses U.S.S.G. § 1B1.13(b)(6), which requires a defendant to demonstrate that (1) he "received an unusually long sentence"; (2) he "has served at least ten years" of the sentence; and (3) a change in the law produces "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." Specifically, he contends that *Dean v. United States*, 581 U.S. 62 (2017), in which the Supreme Court recognized that a sentencing court may lower a defendant's guidelines range for grouped offenses to account for a mandatory consecutive sentence required under 18 U.S.C. § 924(c), represents the requisite change in the law in this case. (ECF No. 340 at 15.) In Opposition, the Government asserts that the Supreme Court's decision in *Dean* does not reflect a change in law. (ECF No. 345 at 7.)

The Supreme Court's decision in *Dean* does not constitute a change in law producing a gross disparity between the sentence Mr. Davis is serving and the sentence likely to be imposed at the time he filed his Motion. *See, e.g.*, *United States v. Martinez*, No. 96-Cr-959 (SHS),

2025 WL 770100, at *3–4 (S.D.N.Y. Mar. 11, 2025) (denying compassionate release where defendant had served at least ten years of an unusually long sentence because defendant did not identify the requisite change in the law); *United States v. Anderson*, Crim. No. 2:98-cr-143, 2025 WL 1644020, at *7–8 (E.D. Va. June 10, 2025) (same).  In *Dean*, the United States Supreme Court clarified that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." 581 U.S. at 69.  Mr. Davis asserts, therefore, that "nothing today would preclude the sentencing court from lowering the guidelines range to incorporate the mandatory consecutive sentence to produce a total punishment for the grouped offenses and [the § 924(c) offense] . . . ."  (ECF No. 340 at 15.)  Yet, Mr. Davis does not identify a rule governing courts within the Fourth Circuit prior to the Supreme Court's decision in *Dean* that would have precluded such action at the time of his sentencing.  Indeed, district courts within the Fourth Circuit have concluded that *Dean* did not change the law in this Circuit.  *See United States v. Brown*, No. 2:11-cr-152, 2024 WL 3357836, at *11 (E.D. Va. July 10, 2024).  Therefore, Mr. Davis has not shown the requisite change in law to justify compassionate release under U.S.S.G. § 1B1.13(b)(6).[9]

### C.  Other Reasons of Similar Gravity as U.S.S.G. § 1B1.13(b)(1)-(4)

Nevertheless, Mr. Davis has shown an extraordinary and compelling reason for compassionate release based on the disparity between his sentence and those of his co-conspirators.  (ECF No. 340 at 17.)  Mr. Davis does not claim that an unwarranted disparity

---

[9] Indeed, Mr. Davis concedes that "Judge Quarles did not explicitly state his belief that he could not go below the minimum advisory sentencing guidelines to incorporate the mandatory minimum consecutive sentence." (ECF No. 340 at 16.)

14

existed at the time of sentencing, but rather that the disparity arose after his co-Defendants received postconviction relief that was unavailable to him. (ECF No. 340 at 18.) Although the Sentencing Guidelines do not specifically address sentencing disparities arising from postconviction relief applicable to some co-defendants but not others, the Fourth Circuit has recognized that a disparity between sentences of co-defendants convicted of the same crime may constitute an extraordinary and compelling reason for relief. *United States v. Johnson*, 143 F.4th 212, 215–16 (4th Cir. 2025). In some cases, the disparity arises over time, such as "where a more culpable co-defendant benefits from changes in the sentencing regime and successfully moves to lower his sentence, such that a less culpable co-defendant ends up with a disproportionately long sentence." *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1018 (D. Md. 2021) (citing *United States v. Payton*, Crim. No. PJM 06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021)); *see also United States v. Brown*, 706 F. Supp. 3d 516, 522 (D. Md. 2023) (noting in favor of relief that co-defendant with similar culpability and criminal history received sentence reduction). Where culpability is roughly equivalent and "the only difference between [the movant] and [co-defendants who received a lesser sentence] is the mere fact that [the movant] elected to exercise his right to a jury trial[,]" a significant disparity may constitute an extraordinary and compelling reason for relief. *Johnson*, 143 F.4th at 215.

In this case, the significant sentencing disparity resulting from Mr. Davis's ineligibility for sentencing reduction as to his § 924(c) conviction is an extraordinary and compelling reason for relief. *See Johnson*, 143 F.4th at 215–16; (ECF No. 340 at 17–19). In *United States v. Johnson*, 143 F.4th 212 (4th Cir. 2025), the Fourth Circuit considered a sentencing disparity between co-defendants after the defendant participated in an interstate drug-trafficking

15

enterprise in which he and his co-defendants were responsible for the deaths of two people. 143 F.4th at 213. While Johnson's co-defendants pleaded guilty and cooperated with the government, Johnson proceeded to trial and was sentenced to two life sentences plus 790 months in prison. *Id.* at 214. Ultimately, one co-defendant pleaded guilty to one murder charge and initially received a mandatory life sentence, later reduced to 20 years. *Id.* Another pleaded guilty to two murder charges and received two mandatory life sentences, later reduced to a total of 40 years. *Id.* Johnson argued that the sentencing disparities between his sentence and those of his co-defendants constituted an extraordinary and compelling reason for relief. *Id.* The district court agreed, and reduced Johnson's sentence. *Id.* at 214–15. The Fourth Circuit affirmed after concluding that the disparity was unjustified because the only distinction between Johnson and his co-defendants was the co-defendants' decisions to plead guilty and cooperate. *Id.* at 215–16.

*Johnson* is instructive in this case. Mr. Davis's co-Defendants pleaded guilty to § 924(c) offenses premised on predicate Hobbs Act robbery convictions under 18 U.S.C. § 1951(c). (ECF Nos. 65; 82; 87.) In subsequent cases, however, the Supreme Court and the Fourth Circuit determined that the residual clause of § 924(c) is unconstitutional, *United States v. Davis*, 588 U.S. 445 (2019), and Hobbs Act conspiracy is no longer a "crime of violence" for the purposes of a sentencing enhancement under § 924(c), *United States v. Simms,* 914 F.3d 229, 233 (4th Cir. 2019) (en banc). Under these precedents, Mr. Davis's co-Defendants' § 924(c) convictions were based on unconstitutional predicate offenses and, therefore, those convictions were vacated and their sentences reduced accordingly. (ECF Nos. 270; 276; 263.) Mr. Davis proceeded to trial, however, and concedes that the record does not establish which

16

conviction, either his 18 U.S.C. § 1951(c) conviction or his 21 U.S.C. § 846 conviction, was

the predicate offense for his § 924(c) conviction. (ECF No. 101; ECF No. 340 at 18–19.) As

a result, Mr. Davis was not eligible for the relief afforded his co-Defendants who pled guilty

pursuant to predicate offenses under 18 U.S.C. § 1951(c) alone.[10]

Currently, Mr. Davis is serving a 248-month sentence, which is significantly longer than

the sentences imposed upon any of his co-Defendants. (ECF Nos. 201, 202 *SEALED*.)

Indeed, Rodney Procter served the second-longest sentence compared to Mr. Davis, and his

sentence was reduced to 102 months' imprisonment—146 months shorter than Mr. Davis's

sentence.[11] (ECF No. 270.) This Court has found disparities of similar or even lesser

magnitude to justify relief. *See Payton*, 2021 WL 927631, at *4–5 (109-month disparity); *Brown*,

706 F. Supp. 3d at 522 (84-month disparity); *Eccleston*, 573 F. Supp. 3d at 1017–18 (68-month

disparity). Additionally, all of Mr. Davis's co-Defendants have been released, while he remains

incarcerated. (ECF Nos. 270; 276; 263.) Just as in *Johnson*, a substantial disparity exists

between Mr. Davis's sentence and those of his co-Defendants, even though the primary

distinction—and indeed the source of the post-sentencing disparity—is that Mr. Davis elected

to exercise his right to a jury trial where they did not.[12] *See* (ECF Nos. 65; 82; 87; 270; 276;

---

[10] This Court addresses this issue more fully in the Memorandum Opinion addressing Mr. Davis's § 2255 Motion (ECF Nos. 224, 231, 241, 288, 290), in which he raises this argument as a basis for relief as to his convictions under § 924(o), (c) in Counts Three and Four, respectively.

[11] After Mr. Davis's co-Defendants' § 924(c) sentences were vacated, Proctor's sentence was reduced to 102 months' incarceration, Thorton's sentence was reduced to 72 months' incarceration, and Trusty's sentence was reduced to 82 months' incarceration. (ECF Nos. 270; 276; 263.)

[12] District courts within this Circuit have recognized that *some* disparity may be appropriate where a defendant is convicted of more counts or engages in more culpable conduct than his co-defendants. *See, e.g.*, *United States v. Locust*, 771 F. Supp. 3d 819, 828 (E.D. Va. 2025) (recognizing defendant's conviction for more Counts than co-defendant who pled guilty justified some disparity); *United States v. Milton*, No. 5:95-cr-70074, 2025 WL 3171162, at *35 (W.D. Va. Nov. 12, 2025) (recognizing defendant's heightened culpability as a leader of the conspiracy warranted some disparity). In this case, Mr. Davis is not more culpable than his co-defendants, as they all participated equally in the planned robbery. *See* (ECF No. 129 at 2–4). Mr. Davis, however, was

17

263; ECF No. 340 at 17–19). That disparity, coupled with the fact that all of Mr. Davis's co-defendants have been released, is unwarranted and constitutes an extraordinary and compelling reason to reduce his sentence. *See, e.g.*, *United States v. Jenifer*, Crim. No. RDB-14-411, 2026 WL 860455, at *4, 6 (D. Md. Mar. 30, 2026) (granting compassionate release based on unwarranted disparity where all but one of defendant's eight co-Defendants had been released). Accordingly, Mr. Davis has established that the disparity between his sentence and those of his co-defendants constitutes an extraordinary and compelling reason for relief.

## III.    3553(a) Factors

Once a court has determined the existence of extraordinary and compelling reasons warranting compassionate release, it must consider whether a sentence reduction is consistent with the applicable 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b)(2); *United States v. Robinson*, Crim. No. ELH-18-17, 2024 WL 1994747, at *5 (D. Md. May 6, 2024). Accordingly, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *United States v. McCoy*, 981 F.3d

---

convicted of and sentenced on five Counts of the Indictment, while his co-Defendants each pled guilty and were sentenced for one Count or two Counts of the Indictment. *Compare* (ECF No. 132 (Judgment sentencing Mr. Davis for Counts One, Two, Three, Four, and Five)) *with* (ECF No. 59 (Co-Defendant Johnson agreement to plead guilty to Count One)); (ECF No. 65 (Co-Defendant Proctor agreement to plead guilty to Counts One and Four)); (ECF No. 82 (Co-Defendant Thornton agreement to plead guilty to Counts One and Four)); (ECF No. 87 Co-Defendant Trusty agreement to plead guilty to Counts One and Four)). This difference likely reflects that Mr. Davis's co-defendants pleaded guilty while he did not, as defendants who plead guilty often do so in exchange for the dismissal of other charges. *See*, *e.g.*, *United States v. Stevenson*, 425 F. Supp. 3d 647, 649 (S.D.W. Va. 2018) (noting defendant agreed to plead guilty to one count in exchange for government dismissing six other counts). Moreover, even where a defendant is convicted of more counts or engages in more culpable conduct, courts within this Circuit have found significant disparities unwarranted. *See, e.g.*, *Locust*, 771 F. Supp. at 828 (finding disparity between defendant's life sentence as compared to co-defendant's three-year sentence unwarranted even where defendant was convicted of more counts); *Milton*, 2025 WL 3171162, at *35–36 (finding disparity between defendant's life sentence as compared to co-defendant's 320-month sentence unwarranted even where defendant was more culpable than co-defendant). Thus, although Mr. Davis was convicted of more counts than his co-defendants who pleaded guilty, the vast disparity here remains unwarranted.

271, 286 (4th Cir. 2020).  These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants.  18 U.S.C. § 3553(a).

Generally, offenses involving violence and firearms militate against release. *See United States v. Nicholson*, 787 F. Supp. 3d 254, 260 (E.D. Va. 2025) (concluding conspiracy to distribute cocaine while armed was serious offense weighing against release); *United States v. Fields*, Crim. No. SAG-04-0004, 2026 WL 63124, at *8–9 (D. Md. Jan. 8, 2026) (concluding participation in drug conspiracy involving the non-fatal shooting of three people was serious offense weighing against release).  Mr. Davis engaged in a conspiracy to commit an armed robbery of a narcotics supplier in violation of § 846 and, in the course of that conspiracy, discussed murdering his co-conspirator and disposing of the body.  (ECF No. 129 at 8.) However, Mr. Davis's actual conduct did not directly involve any act of violence, *see* (ECF No. 129 at 2–4), which slightly reduces the seriousness of his offense and the force of this factor. *See Brown*, 706 F. Supp. 3d at 523 (weighing in favor of relief that defendant's crime did not directly involve any act of violence). Although the serious nature of Mr. Davis's offense thus somewhat disfavors relief, the remaining § 3553(a) factors strongly favor a sentence reduction in this case.

First, Mr. Davis's personal history and characteristics, particularly his efforts toward rehabilitation, and "the need to protect the public" weigh heavily in favor of relief.  Post-

19

sentencing rehabilitation is "highly relevant" to the § 3553(a) sentencing analysis and weighs in favor of relief where the defendant regularly pursues rehabilitative services. *Pepper v. United States*, 562 U.S. 476, 491 (2011); *see also United States v. Martin*, Crim. No. RDB-04-0029, 2021 WL 3172278, at *3 (D. Md. July 27, 2021) (concluding that defendant's rehabilitative efforts, including his participation in educational and therapeutic courses favored relief); *United States v. Bell*, No. RDB-06-179, 2026 WL 601901, at *15 (D. Md. Mar. 4, 2026) (concluding that defendant's rehabilitative efforts, including completing his General Education Development Test, completing rehabilitative courses, and maintaining employment favored relief).  Since beginning his incarceration, Mr. Davis has completed his General Education Development test; courses in finance, parenting, Spanish, and mock interviewing; and 240 hours of training in culinary arts.  (ECF No. 340 at 22.)  While Mr. Davis has a substantial criminal history— for purposes of sentencing in this case, he was assigned a criminal history category of III, *see* (ECF No. 131 at 10)—his post-sentencing efforts demonstrate that he has rehabilitated himself.  *See, e.g. United States v. Booker*, Crim. No. 3:14-cr-7, 2025 WL 2917101, at *16–17 (E.D. Va. Oct. 14, 2025) (weighing defendant's "exemplary" post-sentencing conduct in favor of release despite his long criminal history).  Such rehabilitation diminishes the need for further incarceration to protect the public.  *See e.g., United States v. Harris*, Crim. No. SAG-05-0061, 2026 WL 318977, at *10 (D. Md. Feb. 6, 2026) (finding the defendant's personal characteristics and the "need to protect the public" factors favored relief where the defendant demonstrated rehabilitation). As such, Mr. Davis's personal characteristics, as well as the "need to protect the public" weigh in favor of relief.

20

Finally, as addressed above, the need to avoid unwarranted sentencing disparities among similarly situated defendants strongly counsels relief in this case. As Judge Bredar of this Court has explained, the "circumstances of the co[-]defendants," including their criminal conduct and resulting sentences, are critical to the disparity issue. *United States v. Richardson*, No. JKB-09-0288, 2025 WL 2173452, at *5 (D. Md. July 31, 2025). Accordingly, this Court has found that unwarranted disparities between co-defendants weighs in favor of relief under the § 3553(a) factors. *See Harris*, 2026 WL 318977, at *10–11 (D. Md. Feb. 6, 2026) (finding disparity between defendant's sentence and many of co-defendants' sentences favored reduction); *Eccleston*, 573 F. Supp. 3d at 1020 (finding sentencing disparities between the defendant and his co-defendants "further support the conclusion that the § 3553(a) factors support early release"). In this case, as discussed above, the disparity between Mr. Davis's sentence and those of his co-defendants weighs strongly in favor of relief. *See* (ECF Nos. 201, 202 *SEALED*, 270; 276; 263).

On balance, the § 3553(a) factors in Mr. Davis's case weigh in favor of relief. A sentence reduction of sixty months—from 248 months to 188 months—is sufficient, but not greater than necessary, to reflect the seriousness of the offense, protect the public, provide just punishment, avoid unwarranted disparities and fulfill the other purposes of the sentencing factors. That still-lengthy sentence addresses Mr. Davis's involvement in a potentially violent narcotics conspiracy, while also recognizing his substantial efforts at rehabilitation and the disparity between his sentence and those of his similarly situated co-conspirators.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED this 10th day of April 2026 that Defendant's Motion for Compassionate Release (ECF No. 319) is GRANTED IN PART. Defendant's sentence shall be reduced from 248 months' incarceration to 188 months' incarceration.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge